RANDY SUE POLLOCK
Attorney at Law (CSBN 64493)
2831 Telegraph Avenue
Oakland, CA 94609
Telephone: (510) 763-9967
Facsimile:   (510) 272-0711

Attorney for Defendant
JAIME MEANS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

–ooo–

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>vs.<br><br>JAIME MEANS,<br><br>             Defendant.<br>_____ / | CR. No.  07-00581-1-NJV<br><br>**DEFENDANT MEANS'**<br>**SENTENCING MEMORANDUM**<br><br>Date of Sentencing:  March 14, 2008<br>Time for Sentencing: 9:30 a.m. |

## PRELIMINARY STATEMENT

Both Mr. Means and counsel have read the final presentence report which was received by counsel on December 18, 2007. Counsel did submit corrections to the proposed probation report however they were not mailed until December 16th, three days later than required under the Local Rules [**Exhibit A**]. These corrections were therefore not incorporated into the final probation report. However, counsel did discuss some of the corrections with the probation officer, specifically the portions in paragraph 26, but Ms. Searles did not agree with counsel's position that they were irrelevant. At this time counsel requests that her original corrections be considered by this Court.

**I.**

**A PROBATIONARY SENTENCE
WITHOUT INCARCERATION IS APPROPRIATE IN THIS CASE**

At the time Jaime met with Ms. Searles several months ago and recounted his personal history as well as all the court matters that were outstanding in his life, it would have appeared that a custodial sentence would be appropriate. However Jaime took to heart Ms. Searles advice that he seek treatment for his substance problem. The day following his meeting with Ms. Searles on November 7th, Jaime actively sought out treatment programs and spoke to his mother for help in entering a program. On December 17th Jaime entered the Ohloff program. He has completed the 30 day intensive residential program and is still in the five month program.  [**See Exhibit B**].

In addition to working on his psychological and emotional problems at Ohloff, Jaime has been resolving his outstanding traffic and misdemeanor traffic matters. He has paid all the outstanding fines in his traffic cases [San Francisco Traffic Docket #54090CS and Marin Traffic Docket 1376973] and he has re-obtained his drivers license [he provided DMV with the SR22]. He has a court appearance on March 19th in Marin County Superior Court and will enter a plea of guilty to a violation of Vehicle Code Section 12500. On April 16, 2008, he will appear in Department 16 of the San Francisco Superior Court to show proof of his California drivers license. On that same date, he will appear in Department 30 on his DUI case and show proof of completion of the program and the payment of all fines. He is scheduled to appear on May 23, 2008 in Department 25 (Judge Lee) to show his proof of completion of the Ohloff House program, however he may not graduate until June 23rd or July 23rd.

Jaime has been attempting to pull his life together. When his mother moved to Hawaii, Jaime lost his support system and he basically dropped out and did not communicate with his family. Then, when his brother, who was a successful underwater photographer and engineer at Cisco, tragically died, Jaime could not face his family. He

did not attend the funeral services and he did not have contact with his mother until recently.

Jaime is a very likeable person [**Exhibit D**]. He has excellent skills as an electrician but he has been burdened with deep-seated emotional problems. His mother is willing to help him. [**Exhibit C**]. Back in September she acknowledged to counsel that Jaime has severe compulsions that she believed he could work out if he was determined to do so. Fortunately, Jaime has taken the initial steps to get his life back on track.

Hopefully Jaime's irresponsible approach to his life is coming to an end. If he does not have a prior narcotics conviction, counsel urges this Court to allow Jaime to benefit from the provisions of 18 U.S.C. Section 3607(a) and allow him to prove that he can stay out of trouble. If he is not able to take advantage of that statute, then counsel urges this Court to impose only a 15 day sentence and to delay execution of the sentence until after he has completed the Ohloff Program. Jaime is a young man who can clearly benefit from probation and does not need the added component of additional correctional treatment.

Dated: March 10, 2008                                Respectfully submitted,


                                                    /s/ Randy Sue Pollock
                                                    RANDY SUE POLLOCK
                                                    Attorney for Defendant
                                                    Jaime Means

# EXHIBIT A

## Randy Sue Pollock
Attorney at Law

2831 Telegraph Avenue  
Oakland, California 94609

Tel: (510) 763-9967  
Fax: (510) 272-0711

Ann Searles  
U.S. Probation Office  
450 Golden Gate Avenue, 17th Fl.  
San Francisco, CA 94102

December 16, 2007

Re: United States vs. Jaime Means  
CR. 07-0581-01-NJV

Dear Ms. Searles:

The following are my corrections to the draft presentence report in the above-referenced case:

Page 3, Paragraphs 5, 6 and 7:

The following facts more fully explain the nature of the arrest and search:

After the officer saw the glass containers in Mr. Mean's car Jaime told him that it was marijuana and volunteered to the officer that he had two warrants for his arrest from San Francisco. When the CLETS information stated that Mr. Means was a registered sex offender, he confirmed to the officer that he was on probation, was searchable, and that the conviction was for statutory rape of a minor girl. Mr. Means told the officer that he knew the auto would be searched and he directed the officer to a small amount of methamphetamine located in the center console of his vehicle. Mr. Means also told the officer that there was a glass pipe in an eyeglass case inside a leather pouch on the front passenger backrest.

Page 7-8: Paragraph 26:

Counsel objects to the inclusion of statements made by both the victim and Mr. Means during the course of the presentence interview in Marin County Superior Court. The facts surrounding this conviction are fully covered in the preceding paragraphs and there is no necessity to include these confidential comments, nor are they relevant.

Page 10: Paragraph 35:

Mr. Means did not register on this occasion as he had not changed his address. He had no lease where he was temporarily staying and he still received his mail at his previous address.

Page 10, Paragraph 38:

With respect to Case No. 2296893 in San Francisco Superior Court, on October 3, 2007, a bench warrant was recalled and his case has been continued to allow him to complete the First Offender Program. Proof of completion of the program and payment of all fines is due on January 7, 2008 in Department 30 at 9 a.m.

His case in Marin County Superior Court for driving on a suspended license (Case No. 156204) is set for January 16, 2008 at 9 a.m. in Department M. The DA's Office will allow him four months to obtain his driver's license if he does not have one on that date.

Page 11, Paragraph 41:

Mr. Means advised that with respect to the child support amount owing, the woman has married and changed the child's legal name

Page 11, Paragraph 42:

Jaime lived with his mother in a small house on a ranch outside of the Madre Grande Healing Community in rural San Diego. He lived there from age 4 months until 4 years old.

Page 12, Paragraph 45:

Mr. Means sated that he could find an alternate medication other than marijuana to use for his knee problem.

Page 12, Paragraph 46:

Mr. Means attended two years of group counseling, 2 hours a week, stemming from his felony conviction.

Page 13, Paragraph 49:

On December 14, 2007, Mr. Means voluntarily entered the 30 day residential program followed by a five month program at the Ohlhoff Recovery Program in San Francisco.

Page 14, Paragraph 61:

Mr. Means' mother retained counsel in this case. Mr. Means has been living in his mother's home and has limited income. He will complete the financial forms as soon as he can and will provide them to probation.

Page 16, Paragraph 62, et seq.:

Under 18 U.S.C. Section 3607, the court may with the consent of the defendant, be placed on probation for a term of not more than one year without entering a judgment of conviction.

Very truly yours,

Randy Sue Pollock

c.c. Wendy Thomas, AUSA

EXHIBIT B



January 9, 2008

To: Whom It May Concern

Re: Jaime Means

This letter is to verify that Jaime Means is a resident at the Skip Byron Primary Program (SBPP). He admitted on Monday the 17th day of December 2007. Mr. Means is scheduled to graduate in 30 days upon fulfilling all requirements of the program. His discharge date from the SBPP is set for the 15th day of January 2008. After graduating from the 30-day program, Jaime will immediately transition in the Ohlhoff Men's Residential Program for an additional 5 months. Once he enters the Men's House, Jaime will be required to work during the day and will receive treatment and counseling in the evening.

Mr. Means to date is making significant progress. Jaime is extremely motivated. He is making great strides in identifying problem issues that have negatively impacted his life. Jaime is also beginning to open up in process group and has started speaking about sensitive issues that he kept to himself in the past. Some of the areas that we are focusing on with Jaime are: Substance Abuse ; Anger Management ; Relapse Prevention ; Grief ; and Trauma.

The Skip Byron Primary Program is a residential program for people with addictions to alcohol and/or drugs. Requirements include, but are not limited to, participation in counseling group sessions, attendance at the outside 12-step program meetings, individual counseling sessions, and educational groups. The Skip Byron Primary Program is licensed and certified by the State of California Department of Alcohol and Drugs Programs (3813AN).

Please feel free to contact me at (415) 621-4388 ext 10 if you require further information.

Sincerely,

Arlene Stanich-Prince, C.A.T.C.
Clinical and Administrative Coordinator

601 Steiner Street
San Francisco
California 94117
TEL 415.621.4388
FAX 415.621.6219

EXHIBIT C

*Ibbie White Al-Shamma*

January 25, 2008

Randi Pollack
2831 Telegraph Avenue
Oakland, CA 94609

Dear Randi:

It was difficult to read the documents you sent about Jaime – hard for a mother to think her child capable of acts that counteract the life-affirming principles Jaime and I have shared.

I do recognize the amount of anger, sense of betrayal and frustration Jaime could have accrued – due in many instances from ill-advised decisions I made in my own life.

While most of the facts represented in this document give a fair picture, in some instances I think substance and intent are omitted.

Regarding the time we lived in an intentional community in southern California, I think it important to realize that we moved there when Jaime was 3 months old and left when he was 4 years. Most of that time we actually lived separately in a rented house on an adjacent ranch, where I supervised a pre school for the 6 other children living on the land.

My objective in moving to San Diego County was to have a rural environment with clean air and water and to live in a non-violent community. As a single mother with three children, I believed I needed the support of other people.

I think Jaime's description of the community when he was 18 was colored significantly by his immaturity and failure to understand how his words would impact others. Technically the property ownership was classified as a monastery, we lived there as "renters" – there was no affiliation with Buddhism or any other traditional religion.

It was a loose-knit group of people who wished to live "on the land," growing our own food, purchased supplies and food collectively and worked together to host Wholistic Healing and Herbal retreats once a year. Otherwise, it was a "second home" for people living in San Diego who came up on weekends to enjoy hiking, swimming in the seasonal lakes, working in the vegetable garden and relaxing.

While no one minded if someone wore clothes or not, nudity was by no means the focus of the living environment. We ate meals communally, rotating tasks of cooking, food purchase, gardening, landscaping, and clean up among the residents.

I was a member of the 5-person management team that governed the affairs of the community. After about a year we wrote a grant and received federal funding as an ecology demonstration center. A group traveled to area schools presenting information

*4620 Kapuna Road • Kilauea, HI 96754*
*808-828-0354*

*Ibbie White Al-Shamma*

on ecological practices such as recycling, solar heating and environmental awareness. We hired as many as 35 people to implement the grant and to construct demonstration projects on the land, including a Clivus Multrum (composting toilet) and a solar-heated shower facility.

In 1982, my children and I moved into San Diego so that I could rejoin the work force. I participated in a Regional Occupational Program in technical television production, worked as a publicist for a university and began work on an MBA.

The incident with the underage girl in Marin County was the most serious of Jaime's inappropriate behaviors. I had observed that he appeared to be very active sexually. He is a very attractive young man, and I observed quite a few young girls pursuing him. Several of the girls he dated were older than he, and I believe they encouraged him to be sexually aggressive.

I saw the young woman who reported him to the police and was surprised to hear that she was 14 years old. She looked and dressed like a much older girl. I was also told by Jaime's attorney that she was taking anti depressants and had attempted suicide on more than one occasion. She told Jaime she had been dating a 21-year old man. Not that any of these things excuse his behavior, I just feel that the documentation depicts her as a totally innocent victim, and I'm not sure that is an accurate picture.

The district attorney was very aggressive and claimed Jaime was a "predatory sociopath." She was pushing for state imprisonment. It was an election year and the district attorney was running for re-election; there had been a highly-publicized gang rape earlier in the year in which the boys received minimal sentencing. Because of the forceful claims of the district attorney, Jaime's attorney recommended hiring a forensic psychiatrist. While her report indicated Jaime was very immature emotionally, she found no indication that he was a threat to society or having severe mental problems. Her report was submitted to the Marin County court; I did not get a copy of the report. I checked with the attorney, and he no longer has Jaime's records.

I don't think Jaime took full advantage of the court-mandated counseling and rehabilitation; he attended meetings but in our discussions he voiced resentment and was unwilling to acknowledge his responsibility. After he began seeing Paul Erlich, Jaime became much more responsive. Paul specialized in counseling substance abusers and I think he gained Jaime's trust.

During this time, Jaime and I had long conversations about appropriate sexual behavior and about his need to develop respect for women. It was then he told me about the sexual abuse by Fritz Lauderbeck, a family friend.

Fritz was a highly-respected community member, married, and a Navy pilot and officer. I knew him from the university where I was public relations director; he was a professor of evening classes. In 1983-84 his 15-year old son was having problems with Fritz's wife and I allowed him to stay in my home for about a week while Fritz made arrangements

*4620 Kapuna Road • Kilauea, HI 96754*
*808-828-0354*

Ibbie White Al-Shamma

for the boy to stay at the Navy base. Fritz said he appreciated my help so much he wanted to do something for Jaime – taking him to ride their dune buggy, to the zoo and generally on outings once a week.

This lasted about a year when Fritz told me that he and his wife and son had engaged in a triangular sexual relationship for many years. He assured me he had not assaulted Jaime, but I became uncomfortable with him being alone with Jaime. He also asked me to have sex with him, and I told him to leave and never contact our family.

Having been a sexually-abused child myself, I believe my parental instincts to protect my child were not strong enough to see Fritz's motivation for being with Jaime. After hundreds of hours of therapy, I understand now how deeply the violation of our bodies damages our emotions and self images. The impact is so huge the child grows up believing himself or herself to be irreparably damaged, unworthy, filled with unexpressed rage and sense of betrayal, and from that foundation, the child develops coping mechanisms to survive.

In my opinion, a true healing can occur once the individual desires to delve deeply into those bottled up feelings. It takes courage and determination to do whatever is necessary to release the fear and anger and learn to trust another human being. I have hoped for this for Jaime for many years, but I knew it had to come from his own desire to end his substance abuse and his repetitive self-destructive behaviors.

I am encouraged by my conversations with Jaime as he is going through this rehabilitation process. I am hopeful that he is now ready to grow in maturity and to find more healthful coping mechanisms.

I am grateful to you and Henry for your allegiance and support for Jaime. As you know, I will do all I can to help his progress.

Regards,

*Ibbie White Al-Shamma*

Ibbie White Al-Shamma

4620 Kapuna Road • Kilauea, HI 96754
808-828-0354

# EXHIBIT D

Subj: **character reference from Jena Davis**
Date: 12/11/2007 11:13:16 P.M. Pacific Standard Time
From: jena.davis@yahoo.com
To: meansound@hotmail.com, pollockesq@aol.com

To Whom it may concern,

My name is Jena Davis. I live in San Rafael and am the assistant manager at Massage Envy in San Rafael. I completed Center Point's 6 month residential treatment program in September, 2007. Jaime and I have been dating for over 2 years. He has been very supportive of my recovery. He has given me his vehicle to help me get to and from work. He has attended many NA/AA meeting with me, and has been there for me when I needed him the most.

Going through treatment has changed my entire life. I lost everything, including my self, but with the help of many counselors and my peers I have finally learned how to live life "on lifes terms". Jaime needs help. I believe that Jaime wants to learn how to live life "on lifes terms". I believe that with counsling and treatment he can learn new coping skills. His whole life, he has turned to mind altering substances to cope with emotions he's been uncomfortable with. He has a lot of issues he needs to process, with a group of people who can relate and give him constructive feed back. I also believe it is vital that Jaime builds a support network; New friends are vital to his recovery. I am confident that with the proper treatment and support Jaime too can get back on the right path. Thank you for your time.

Sincerely,

Jena Davis

---

Looking for last minute shopping deals? Find them fast with Yahoo! Search.

Subj: **Jaime Means**
Date: 12/11/2007 6:33:48 P.M. Pacific Standard Time
From: jd@cafeflore.com
To: meansound@hotmail.com, pollockesq@aol.com

To whom it concerns,

I am Jon Petras, owner of Café Flore on the corner of Market and Noe in San Francisco. We have been in business for 35 years and are very well known and lovingly supported by the community.

I have employed Jaime Means for electrical and sound engineering projects at the Café for the past several years. Having hired many electricians over the years I am impressed at Jaime's skill and knowledge.

In the past year Jaime seems to have been distracted sometimes. Recently I have had him install some lighting and Jaime seems perfectly clear and focused now and his work is impeccable as always. I plan to continue to call him for such needs. I wish more repair people were this skilled.

Jon Petras
415-626-8579

Subj: **Jaime Means**
Date: 12/11/2007 8:03:33 P.M. Pacific Standard Time
From: michelleburke51@yahoo.com
To: meansound@hotmail.com, pollockesq@aol.com

This is a letter of support for Jaime Means. Jaime has been employed by my boss to fix or install numerous projects over the past several years so I have gotten to know Jaime. I have given Jaime rides on my way into work, enjoyed casual conversation, and even loaned him a $20 occasionally when an ATM was not available and he needed bus fare. Jaime has always been a calm, easy to talk to, reasonable person.

I grew up on a ranch where everything that needs to be repaired was repaired on site by my father and I, so I am very familiar with tools and how things work. Jaime is definitely competent to repair many things electrical, especially home wiring. I'd hire him too if I owned a house.

I know that this past year Jaime seems to have had a hard time but the drama in his life appears to have improved greatly since he moved out of San Francisco. He has done several jobs recently that I know of and has been efficient and tidy. I have spoken with him and have given him rides down the hill so he could catch the last bus back home. It sounds like his life is reaching a state of calm that was missing for a little while.

Michelle Burke
(415) 846-1077

---

Looking for last minute shopping deals? Find them fast with Yahoo! Search.

Subj: **Jaime Means**
Date: 12/11/2007 6:52:50 P.M. Pacific Standard Time
From: jd_sanfrancisco@yahoo.com
To: meansound@hotmail.com, pollockesq@aol.com

I have known Jaime Means since early 2005. Jaime is easy to work with and is good at installing home electrical. I own a three unit building at 451 Burnett Avenue in San Francisco. I have owned dozens of buildings over time and have been very happy to have found Jaime to do electrical work around my home and in my rental units. Jaime seems to have had a hard time getting here sometimes, but has been on time the last two jobs I called him for. Right now I would hire Jaime for more hours if I could have him for more hours in a day. He moved away from the city and these last couple times has come into town on public transit to work for me. I know it is difficult to travel with tools in tow via bus. I commend Jaime for both coming into town via bus and arriving on time. I hope Jaime will remain available to work for me in the coming months.
David Petras
415.647.9691

---

Be a better friend, newshound, and know-it-all with Yahoo! Mobile. Try it now.

Subj: **character letter from Ryan A. Weeder CS3 USNR**
Date: 12/11/2007 9:34:16 P.M. Pacific Standard Time
From: meansound@hotmail.com
To: pollockesq@aol.com

To whom it may concern,

I've known Jaime Means since 1993. We have always been close friends and I believe him to be a good natured man, who behaves with integrity. I recently separated from active duty navy on June 29th 2007. while stationed in Tokyo, I was Petty Officer Third Class (E4) attached to VFA102. Since returning to Marin I was very pleased to run into Jaime. We bumped into each other in Mill Valley sometime in September. Kawika Chetron, Jaime's Brother, Is also a friend of mine. You can imagine my sorrow when I found out about is untimely death on march 17th 2007. Jaime informed me he in the process of addressing his legal responsibilities. I support him in this and have offered my assistance toward his goal. since we met he and I have spent much of our free time together. Jaime spends his time between working in the city and with his few friends he still associates with, like myself. To my knowledge Jaime has been doing his best to fulfill his legal obligations and obey all laws. I am confident he will be able to turn his life around.

Sincerely,

Ryan A. Weeder CS3 U[ http://InboxLight.aspx?n=614951883 ] Mail SNR

---

i知 is proud to present Cause Effect, a series about real people making a difference. Learn more =

Tuesday December 11 2007